**Jimmy HOWELL Plaintiff**

v.

**OPERATIONS MANAGEMENT INTERNATIONAL, INC. and Chris Holloway Defendants**

**No. 1:00CV16–D–D.**

United States District Court, N.D. Mississippi, Eastern Division.

Sept. 5, 2001.

---

Ben M. Logan, Soper, Dent & Logan, Tupelo, MS, David Kirk Tharp, Brent Hardy Hazzard, Waide & Associates, PA, Tupelo, MS, Luther C. Fisher, IV, Luke Fisher, Oxford, MS, for Plaintiff.

Mark S. Johnson, William S. Siler, Jr., Phelps & Dunbar, Tupelo, MS, Wade W. Herring, II, Hunter, Maclean Exley & Dunn, PC, Savannah, GA, for Defendant.

## OPINION

DAVIDSON, Chief Judge.

Presently before the court is the Defendants' motion for partial summary judgment. Upon due consideration, the court finds that the motion should be granted, and the Plaintiff's claims for defamation, wrongful termination, intentional infliction of emotional distress, and violation of federal whistleblower statutes shall be dismissed. The Plaintiff's claim for violation of provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (RICO), was not addressed in this motion, and is therefore still pending before the court.

### A. Factual Background

The Plaintiff, Jimmy Howell, began at-will employment with the Defendant Operations Management International, Inc. (OMI) on October 1, 1998, when OMI began operating the Tupelo waste-water management facility. The Plaintiff filed a complaint with the Occupational Safety and Health Administration (OSHA) on September 17, 1999, alleging numerous safety violations at OMI's facility. OMI suspended the Plaintiff from employment, without pay, on November 17, 1999, and directed him to participate in OMI's Employee Assistance Program (EAP) in order to receive psychiatric counseling and treatment. On December 2, 1999, OSHA addressed the Plaintiff's allegations, finding

no basis to any of the alleged safety violations in the Plaintiff's complaint. While still suspended from work, the Plaintiff filed a second OSHA complaint on December 14, 1999, citing further safety violations at OMI's facility. As with the first complaint, this complaint did not result in any citations by OSHA. Subsequent to the filing of this lawsuit, the Plaintiff then filed a third OSHA complaint on January 28, 2000, alleging that OMI placed him in the EAP in retaliation for voicing safety concerns; OSHA has yet to issue any findings in regard to that complaint. On February 11, 2000, after the Plaintiff was cleared by the EAP psychiatrist to return to work, OMI placed the Plaintiff on indefinite suspension without pay, although he retains his benefits.

The Plaintiff filed this action on January 18, 2000, raising claims for defamation, wrongful termination, intentional infliction of emotional distress, violation of federal whistleblower statutes, and violation of the provisions of the RICO Act, in connection with the Defendants' refusal to allow him to return to work. On May 25, 2001, the Defendants filed the pending motion for partial summary judgment, seeking judgment as a matter of law with regard to the Plaintiff's claims for defamation, wrongful termination, intentional infliction of emotional distress, and violation of federal whistleblower statutes.

### B. Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to go beyond the pleadings and "by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. That burden is not discharged by mere allegations or denials. Fed.R.Civ.P. 56(e).

While all legitimate factual inferences must be viewed in the light most favorable to the non-movant, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### C. Discussion

**1. The Plaintiff's Claims for Intentional Infliction of Emotional Distress and Violation of Federal Whistleblower Statutes**

The Plaintiff has formally confessed his claims for intentional infliction of emotional distress and for violation of federal whistleblower statutes. As such, the court finds that the Defendants are entitled to judgment as a matter of law with regard to these claims.

2. The Plaintiff's Claims for Defamation

■ Under Mississippi law, the elements of a defamation claim are:

(1) a false and defamatory statement concerning the plaintiff;

(2) an unprivileged communication to a third person;

(3) fault amounting to at least negligence on the part of the publisher; and

(4) actionability irrespective of special harm or the existence of special harm.

*Blake v. Gannett Co.*, 529 So.2d 595, 602 (Miss.1988); *Burroughs v. FFP Operating Partners, L.P.*, 28 F.3d 543, 549 (5th Cir. 1994).

The Plaintiff claims he was defamed by the Defendants in three respects: (1) because the fact that the Plaintiff had contracted Hepatitis was exposed to the public; (2) that he was accused of criminal acts in regard to a suspicious order of red phosphorous, an ingredient utilized in the manufacture of methamphetamine; and (3) that his reputation was injured by allegations he committed sabotage at OMI's facility.

a. The Plaintiff's Hepatitis

■ The Plaintiff admits that it is true that he has Hepatitis. As such, this admission constitutes a complete defense to his defamation claim against the Defendants, as the first element of a defamation claim requires that the statement be false. *See Burroughs*, 28 F.3d at 549 (holding that truth is complete defense to claim for defamation). The Defendants, therefore, are entitled to judgment as a matter of law on the Plaintiff's claim of defamation, insofar as the claim relates to the Plaintiff's hepatitis.

b. The Red Phosphorus Order

■ Subsequent to the Plaintiff's initial suspension from employment, OMI management learned that the Plaintiff's daughter, who is an OMI lab technician, had apparently placed an order for a substance called red phosphorus. No such chemical was authorized by the facility, but the substance had nevertheless been ordered and delivered to the facility. The substance, which is utilized in the manufacture of methamphetamine, had then disappeared from the facility. Upon learning of this, the Defendants notified the Lee County Sheriff's office concerning the suspicious order and disappearance of the substance; an investigation into the incident was then launched. The Plaintiff himself was never charged criminally in connection with the red phosphorus incident.

The Plaintiff claims that the Defendants defamed him by notifying the Lee County Sheriff's office concerning the order and disappearance of the red phosphorus. He also claims that he was defamed when an OMI manager stated, in a letter, that OMI understood that the Plaintiff was the subject of a pending criminal investigation.

■ When a law enforcement organization has a legitimate and direct interest in the subject matter of a statement made by an employer concerning an employee, the employer's statement is privileged and is deemed non-defamatory as a matter of law. *Downtown Grill, Inc. v. Connell*, 721 So.2d 1113, 1119 (Miss.1998); *Burroughs*, 28 F.3d at 547. Here, the Lee County Sheriff's office had a legitimate and direct interest in OMI's statements concerning the order of a chemical not authorized to be ordered by OMI employees, and that is known to be utilized in the illegal manufacture of methamphetamine. As such, OMI's statements to the Lee County Sheriff's office concerning the red phosphorus are privileged and non-defamatory.

■ As for the OMI manager's statements, in a letter, concerning the Plain-

tiff's involvement in a pending criminal investigation, the Plaintiff admits that he was the subject of an investigation by the Lee County Sheriff's office concerning the red phosphorus. As such, the manager's statements were true and constitute a complete defense to the Plaintiff's allegations of defamation. *See Burroughs*, 28 F.3d at 549. Further, it is undisputed that the letter in question was not published to any third parties, but rather was mailed solely to the Plaintiff. *See Blake*, 529 So.2d at 602 (holding that unprivileged communication to third person is required element of defamation claim).

For the foregoing reasons, the court finds that the Plaintiff's claim of defamation in connection with the order and disappearance of red phosphorus fails, and the Defendants are entitled to judgment as a matter of law on this portion of the Plaintiff's claim of defamation.

### c. Allegations of Sabotage at OMI's facility

The Plaintiff claims he was defamed because the Defendant Holloway, in conversations with other OMI employees, accused the Plaintiff of committing sabotage at OMI's facility.

Under Mississippi law, statements made by employers and their agents are entitled to a qualified privilege that protects them from liability for defamation so long as the allegedly defamatory statement was made in good faith by an individual with a legitimate and direct interest in the subject matter of the statement and was published solely to other individuals with a corresponding interest in the subject matter. *Staheli v. Smith*, 548 So.2d 1299, 1305–06 (Miss.1989); *Dawkins v. Sears Roebuck and Co.*, 109 F.3d 241, 243–44 (5th Cir.1997). Statements made within the scope of this privilege are presumed to be in good faith absent a showing of actual malice, and the Plaintiff bears the burden

of establishing malice. *Esmark Apparel, Inc. v. James*, 10 F.3d 1156, 1162 (5th Cir.1994); *Gordon v. Tenneco Retail Serv. Co.*, 666 F.Supp. 908, 911 (N.D.Miss.1987).

Both the Mississippi Supreme Court and federal courts applying Mississippi law have long upheld this privilege in the context of statements regarding alleged employee misconduct. *See, e.g., Bulloch v. City of Pascagoula*, 574 So.2d 637, 642–43 (Miss.1990) (police chief's statement that he believed police officer had violated law enjoyed qualified privilege); *Esmark Apparel*, 10 F.3d at 1161–63 (5th Cir.1994) (employer's statement to co-workers that plaintiff had been dismissed for theft was entitled to qualified privilege); *Gordon*, 666 F.Supp. at 911–12 (same).

Here, it is undisputed that the Defendants had a legitimate and direct interest in investigating any sabotage that occurred at the waste-water facility, and an interest in communicating with employees as a part of that investigation. Likewise, the employees had a corresponding interest in the operation of the facility and in the investigation into any sabotage. Information concerning the Plaintiff's potential involvement in any sabotage, therefore, would fall within the scope of the privilege, as did the alleged employee misconduct in the above-cited cases. The Plaintiff has not alleged that the statements were published to any outside third party without an interest in OMI's facility, nor has he alleged that the statements were made with malice. As such, the statements are privileged, and the Defendants are entitled to judgment as a matter of law on this portion of the Plaintiff's claim of defamation.

### 3. The Plaintiff's Claim for Retaliatory Discharge Under Mississippi Law

Mississippi recognizes a narrow public policy exception to the employment at will doctrine whereby an employer may

not discharge an employee for reporting illegal acts of his employer to the employer or anyone else. *McArn v. Allied Bruce–Terminix Co.*, 626 So.2d 603, 606 (Miss. 1993).

The Plaintiff asserts a claim for retaliatory discharge under *McArn,* and states that he was terminated for reporting safety violations to OSHA. In asserting this claim, however, the Plaintiff does not assert that OMI's purported violations of OSHA regulations constituted criminal illegalities. Rather, the Plaintiff argues that the *McArn* exception protects employees whom report conduct other than criminally illegal acts.

▮ The *McArn* exception has never been held to protect activity other than the reporting of, or refusal to commit, criminal acts. *See, e.g., Rosamond v. Pennaco Hosiery, Inc.*, 942 F.Supp. 279, 285–87 (N.D.Miss.1996). Here, the Plaintiff does not allege that OMI's purported violations of OSHA safety regulations constituted criminally illegal acts. *See* Plaintiff's Deposition at 238–39. Instead, the Plaintiff invites the court to expand the *McArn* exception to include the reporting of acts for which civil penalties may be imposed. The *McArn* exception, however, does not protect employees who report acts for which there may be civil penalties, as opposed to acts for which criminal penalties may be imposed. *Rosamond,* 942 F.Supp. at 287; *see Spencer v. Lowe's Home Ctrs .*, No. 1:98CV11–B–D, 1999 U.S. Dist. LEXIS 4265, at *9 (N.D.Miss. March 29, 1999) ("[F]ederal courts have consistently refused to interpret *McArn*'s public policy exception to include the refusal to engage in civil illegality."). As such, the court finds that the Plaintiff cannot maintain a cause of action for retaliatory discharge under *McArn* and its progeny. There is no genuine issue as to any material fact concerning this claim, and the Defendants are entitled to judgment as a matter of law.

### D. Conclusion

In sum, the Defendants' motion for partial summary judgment shall be granted. The Defendants have shown that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law as to the Plaintiff's claims for defamation, wrongful termination, intentional infliction of emotional distress, and violation of federal whistleblower statutes.

A separate order in accordance with this opinion shall issue this day.

### ORDER

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the Defendants' motion for partial summary judgment (docket entry 80) is GRANTED;

(2) the Plaintiff's claims for defamation, wrongful termination, intentional infliction of emotional distress, and violation of federal whistleblower statutes are DISMISSED WITH PREJUDICE; and

(3) the Plaintiff's remaining claim, for violation of the provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (RICO), shall proceed to trial.

All memoranda, depositions, declarations and other materials considered by the court in ruling on this motion are hereby incorporated into and made a part of the record in this action.